IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANET WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 5025 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | Magistrate Judge Finnegan |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Janet Washington seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. § 1381a. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After careful review of the record, the Court now affirms the Commissioner's decision.

## PROCEDURAL HISTORY

Plaintiff applied for SSI on October 21, 2010, alleging that she became disabled on October 1, 2009 due to lupus and rheumatoid arthritis. (R. 122, 158, 179). The Social Security Administration denied the application initially on February 3, 2011, and again upon reconsideration on April 26, 2011. (R. 58-64, 65-68). Plaintiff filed a timely request for hearing and appeared before Administrative Law Judge Patrick Nagle (the "ALJ") on March 28, 2012. (R. 30). The ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from vocational expert Julie Lynn Bose (the "VE").

Shortly thereafter, on April 23, 2012, the ALJ found that Plaintiff is not disabled because there are a significant number of light jobs she can perform. (R. 14-21). The Appeals Council denied Plaintiff's request for review, (R. 4-6), and Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.

In support of her request for reversal or remand, Plaintiff argues that the ALJ (1) should have found that her osteoarthritis and degenerative spinal changes are severe impairments; and (2) made a flawed residual functional capacity ("RFC") assessment that failed to properly account for the medical opinions of record, leading to an incomplete hypothetical question to the VE. As discussed below, the Court finds no merit to any of these arguments.

## **FACTUAL BACKGROUND**[1]

Plaintiff was born on August 2, 1959, and was 52 years old at the time of the ALJ's decision. (R. 122). She completed the 10th grade and has worked at various times as a grocery store checker, nurse's aide and barmaid. Her last job was as a bartender and spanned approximately eleven years until the bar closed in March 2009. She has not worked since that time. (R. 33-34, 166, 209). Plaintiff lives in an apartment with her daughter and young granddaughter. (R. 43).

**A.    Medical History**

    **1.    2010**

The first available medical record is from May 19, 2010, when Plaintiff went to the John H. Stroger, Jr. Hospital ("Stroger Hospital") emergency room complaining of intermittent swelling of the joints, weight loss, night sweats, and "knots" in her elbows,

---

[1] Consistent with the arguments on appeal, this opinion focuses on Plaintiff's joint pain.

hands, wrists, knees and ankles over a period of a couple of months. (R. 240, 275). A physical examination at that time revealed no swelling or tenderness and full range of motion in all joints, but the treatment note reflects that Plaintiff had chronic joint pain from a "rheumatoid process." (R. 240-41). She was discharged with a diagnosis of arthralgia (joint pain) and an instruction to see her primary care physician. (R. 241, 274).

On June 29, 2010, Plaintiff started seeing Nevenka Maric, M.D., at the Austin Health Center. Dr. Maric's handwritten notes are difficult to decipher, but there is no dispute that she examined Plaintiff five times during 2010 and at some point diagnosed her with systemic lupus erythematosus.[2] The June 29 note reflects that Plaintiff had gone to the ER twice over the prior three months for joint pain, and had lost 40 pounds in the course of a year. (R. 224). During a follow-up visit with Dr. Maric on July 15, 2010, Plaintiff complained of left ankle pain at a level of 2 out of 10. (R. 223). When she returned to Dr. Maric for a scheduled follow-up appointment on August 31, 2010, she reported pain and swelling in the right ankle, left knee and both hands. (R. 222).

Dr. Maric's next note, dated September 13, 2010, states that Plaintiff had been experiencing joint pain and numbness in the left foot since October 2009, and was taking 100mg of naproxen for the pain. (R. 242, 283). Bilateral x-rays of Plaintiff's hands showed diffuse osteopenia (bone density loss not severe enough to be classified as osteoporosis) in all the visualized bones but no evidence of bone destruction or

---

[2] Systemic lupus erythematosus is a chronic "autoimmune disease in which the body's immune system mistakenly attacks healthy tissue." Symptoms vary and may "come and go," but most people experience joint pain and swelling in the fingers, hands, wrists and knees, with some individuals developing arthritis. (www.nlm.nih.gov/medlineplus/ency/article/000435.htm, last viewed on January 12, 2015).

3

erosion, (R. 243), while bilateral x-rays of both knees showed mild osteoarthritis with small spur formation. (R. 244). Dr. Maric prescribed tramadol for the pain and noted that Plaintiff had a positive ANA test indicative of an autoimmune disorder. (R. 242). At Plaintiff's next follow-up appointment on November 4, 2010, she complained of pain in both legs and the right shoulder. (R. 221). She had applied for disability benefits a couple of weeks earlier on October 21, 2010.

### 2. 2011

On January 17, 2011, Mahesh Shah, M.D., performed an Internal Consultative Examination of Plaintiff for the Bureau of Disability Determination Services ("DDS"). (R. 209-12). Plaintiff told Dr. Shah that the joint pain started in October 2009 and she was diagnosed with lupus in early 2010. Though tramadol helps with the pain, she still experiences aches and pains mainly in her hands, knees and ankles, and she sometimes develops stiffness in her shoulder and knots on her elbows. Plaintiff reported using a cane to walk when the pain gets worse, and said she cannot take baths due to difficulty getting up and out of the tub. (R. 209).

On examination, Plaintiff was able to walk slowly without a cane, get up from a chair and get on and off the exam table, but she exhibited discomfort lying down and rising back up. (R. 210). She had marked tenderness in the lumbar region with no deformities or paraspinal muscle spasms, and mild, vague tenderness in the shoulders, elbows, knees and ankles with no swelling or deformity. Dr. Shah noted full but slow range of motion and strength of 5/5 in all arm and leg joints, and reported that Plaintiff's handgrip, finger grasps, and fine and gross manipulations were all normal. (R. 211-12). She was able to bear her own weight and heel walk, but toe walking caused discomfort.

4

In that regard, Plaintiff had tiny bunions on both feet which Dr. Shah described as "uncomplicated." (R. 211). Dr. Shah diagnosed a history of lupus with "aches and pains in different joints." (R. 212).

A couple of weeks later, on January 31, 2011, George Andrews, M.D., completed a Physical Residual Functional Capacity Assessment of Plaintiff for the DDS. (R. 213-20). Dr. Andrews found that Plaintiff can occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand, walk and sit for about 6 hours in an 8-hour workday; and push and pull without limitation. (R. 214). Plaintiff otherwise has no postural, manipulative, visual or environmental limitations. (R. 215-17). In making this assessment, Dr. Andrews cited the September 13, 2010 hand and knee x-rays showing diffuse osteopenia and mild osteoarthritis, and noted Plaintiff's complaints of joint tenderness, pain and fatigue. He also discussed the results of Dr. Shah's January 17, 2011 consultative exam, which revealed full range of motion in all joints, normal strength of 5/5, full ability to grip and perform both fine and gross manipulation, and slow but independent gait. (R. 214, 220).

On February 10, 2011, Plaintiff had another follow-up visit with Dr. Maric for medication refill and a primary complaint of numbness on the left big toe. (R. 234). The notes, now typed instead of handwritten, confirmed that Plaintiff suffers from pain in multiple joints and systemic lupus erythematosus. (R. 234, 247-48, 341). Shortly thereafter, on February 24, 2011, Plaintiff had a chest CT scan showing multilevel degenerative changes in the thoracic spine but no suspicious osseous lesions. (R. 340). Plaintiff's status was largely unchanged when she next saw Dr. Maric at a March 14, 2011 follow-up exam, except that she was experiencing abnormal weight loss. (R.

5

232). Dr. Maric referred her for "evaluation of osteopenia," and a bone densitometry taken that day showed osteoporosis of the lumbar spine and osteopenia of the bilateral femoral necks. (R. 233, 253).

In late March and into April 2011, Plaintiff experienced problems extending her right pinky finger secondary to an abscess on her forearm that developed following an IV injection. (R. 285, 286). On April 25, 2011, Victoria Dow, M.D., affirmed Dr. Andrews' RFC assessment from January 2011. (R. 254-56). A couple months later on June 9, 2011, Plaintiff told Louis Rohr, M.D., a colleague of Dr. Maric, that she had been suffering from knee pain off and on for a long time and needed stronger pain medications "as she feels immune to the ones she's taking and takes more than the recommended dose." (R. 293, 336). Plaintiff said her hands "hurt a lot and all joints are hurting," and Dr. Rohr increased her tramadol dosage to 100mg. (R. 293-94, 336-37).

Plaintiff returned to Dr. Maric for a scheduled follow-up exam on July 7, 2011. Her chief complaint was pain and swelling in multiple joints, along with worsening bunions, though she reported her current pain as 0 out of 10. (R. 296-97, 346). Dr. Maric noted that Plaintiff was "able to walk with a cane" despite the bunion in her right toe but referred her for surgery and an x-ray. Plaintiff's lupus was progressing as expected at that time, and Dr. Maric confirmed that she was scheduled for a rheumatology evaluation in September. (R. 297-98). At a follow-up appointment with Dr. Maric on October 13, 2011, Plaintiff reported missing her rheumatology appointment, and there is no evidence that she pursued the surgical consult or treatment for the bunions. She complained of pain in her ankles and knees, and Dr. Maric diagnosed moderate lupus, joint pain, bunions and osteoporosis. (R. 328-29).

The last treatment note is from December 22, 2011, when Plaintiff saw Dr. Maric so she could fill out her disability paperwork. (R. 326). In that regard, Dr. Maric completed a "Medical Opinion Re: Ability to do Work-Related Activities" form at the request of Plaintiff's attorney. (R. 265-67). Dr. Maric's circled answers indicated that Plaintiff can lift 10 pounds occasionally and less than 10 pounds frequently; stand and walk for less than 2 hours a day; sit and stand for 30 minutes at a time before needing to change position; frequently twist; occasionally stoop and climb stairs, meaning "from very little to up to 1/3 of an 8 hour day"; and never crouch, climb ladders, kneel, crawl or balance. (R. 265-66). Plaintiff needs the option to shift from sitting to standing to walking at will; she is restricted in the ability to reach, handle, finger, push and pull; she must avoid concentrated exposure to noise, fumes, odors, dusts, gases, and poor ventilation; she must avoid even moderate exposure to extreme cold, extreme heat, wetness and humidity; and she must avoid all exposure to hazards. (R. 266). Dr. Maric indicated that Plaintiff would be absent from work about 3 times a month and is not capable of performing a full-time job. (R. 267).

B.      **Plaintiff's Testimony**

At the March 28, 2012 hearing before the ALJ, Plaintiff testified that she worked six hour shifts as a bartender until the bar closed in 2009. (R. 33). Though she looked for another job, the bars she applied to all thought she "was too old for them." (R. 35). Now, Plaintiff does not think she can work at all because she cannot hold or grip things with her hands, and has pain in her ankles, knees, back and feet. (R. 35-37). Initially, Plaintiff told the ALJ that she experiences no hand pain with tramadol, (R. 36-37), but she subsequently said that tramadol merely helps her tolerate the pain and she still

7

cannot use her hands to grip, button her coat or comb her hair. (R. 40, 47-48). The medication does not help her ankle pain, so she wraps and elevates her feet. Doctors want to operate on Plaintiff's bunions but she has refused treatment. (R. 37-38, 40-41). She also declines to take stronger pain medication such as Vicodin because "I don't like the way it makes me feel." (R. 39).

With respect to the back pain, Plaintiff testified that she has to alternate sitting and standing every ten minutes or so because she gets a "sharp, stabbing pain" across her lower back. (R. 40). She walks with a cane, which helps prevent falls, (R. 43), and tries to walk around the block sometimes, but at least once a week she is unable to do so because her ankles hurt too much. (R. 48-49). Plaintiff does not think she can get through the day without lying down for at least an hour. (R. 50).

**C. Vocational Expert's Testimony**

Ms. Bose testified at the hearing as a VE. The ALJ asked her to consider a hypothetical person of Plaintiff's age, education and past work experience who can occasionally lift 20 pounds; frequently lift 10 pounds; stand and walk up to 6 hours in an 8-hour workday while using a handheld assistive device; sit up to 6 hours in an 8-hour workday; occasionally climb ramps, stoop and crouch; and frequently handle, finger and feel; but can never climb ladders, ropes or scaffolds; never kneel or crawl; must avoid moderate exposure to extremes of cold, heat, wetness and humidity; and must avoid concentrated exposure to excessive noise. (R. 52-53). The VE testified that such a person would not be able to perform Plaintiff's past bartending work because it required the use of both hands and no cane. (R. 53). However, the person could still work other light jobs as an office helper (976 jobs available), a mail clerk (2,732 jobs available) or a

laundry folder (5,261 jobs available). (R. 53-54). The same jobs would be available if the person also needed to sit or stand alternately at will, but not if the person could only occasionally handle, finger and feel. (R. 54-55).

**D.     Administrative Law Judge's Decision**

The ALJ found that Plaintiff's lupus and rheumatoid arthritis are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-18). Though Plaintiff also suffers from mild osteoarthritis and osteopenia, there is "no indication that she has had any severe limitation" from those conditions and, thus, "they cannot [be] regarded as severe impairments." (R. 16). After reviewing the medical records in detail, the ALJ determined that Plaintiff has the capacity to perform light work with the following restrictions: she needs a sit/stand option; she cannot climb ladders, ropes, or scaffolds, nor can she kneel or crawl; she can occasionally climb ramps or stairs, stoop and crouch; she can frequently handle, finger and feel; she must have a job that can be performed while using a hand-held assistive device at all times when standing; and she must avoid even moderate exposure to extremes of cold, heat, wetness and humidity, and must avoid concentrated exposure to excessive noise. (R. 18).

In reaching this conclusion, the ALJ gave considerable weight to the opinion of Dr. Andrews, affirmed by Dr. Dow, that Plaintiff is capable of a full range of light work, though the ALJ imposed further restrictions "based on the new evidence the state agency did not have in its possession." (R. 20). The ALJ did not give much weight to Dr. Maric's assessment that Plaintiff is capable of at most sedentary work, explaining that the opinion was "conclusory with no explanation," consisting of mere checking of

boxes on a form. (R. 19). In addition, the opinion "was not supported by the objective clinical and laboratory findings noted in either the clinic or the hospital." (*Id.*).

Based on the stated RFC, the ALJ accepted the VE's testimony that Plaintiff remains capable of performing a significant number of light jobs available in the national economy, including office helper, mail clerk or laundry folder. (R. 21). The ALJ thus concluded that Plaintiff is not disabled within the meaning of the Social Security Act, and is not entitled to benefits.

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by Section 405(g) of the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citation omitted). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court's task is to determine whether the ALJ's decision is supported by substantial evidence, which is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Skinner*, 478 F.3d at 841).

In making this determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v.*

*Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover SSI under Title XVI of the Social Security Act, a claimant must establish that she is disabled within the meaning of the Act. 42 U.S.C. § 1382c(a)(3); *Rapsin v. Astrue*, No. 10 C 318, 2011 WL 3704227, at *5 (N.D. Ill. Aug. 22, 2011). A person is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* In determining whether a claimant suffers from a disability, the ALJ conducts a standard five-step inquiry: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. §§ 404.1520, 416.920; *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**C.     Analysis**

Plaintiff claims that the ALJ's decision must be reversed because he (1) he should have found that her osteoarthritis and degenerative spinal changes are severe impairments; and (2) made a flawed RFC assessment that failed to properly account for

11

the medical opinions of record, leading to an incomplete hypothetical question to the VE.

### 1. Severe Impairments

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe" impairment, meaning an impairment that "significantly limits [one's] physical or mental ability to do basic work activities." *Castile*, 617 F.3d at 926 (quoting 20 C.F.R. § 404.1520(c)). The Seventh Circuit has made clear that the severity assessment is a mere "threshold requirement" because "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Id*. at 926-27. That is exactly what occurred here. The ALJ found that Plaintiff suffers from two severe impairments, lupus and rheumatoid arthritis, and went on to address each additional evaluative step.

Plaintiff objects that the ALJ should have found that her osteoarthritis and degenerative disease of the thoracic spine are also severe impairments, but she merely cites to tests confirming the existence of those conditions without indicating how they specifically impact her ability to work. (Doc. 19, at 9). To the extent Plaintiff believes the impairments cause her to experience associated exertional, postural and manipulative limitations, the ALJ expressly considered such restrictions in determining her RFC at step four of the sequential analysis. Thus, "this particular [severity] determination is of no consequence with respect to the outcome of the case," and the Court declines to reverse or remand on this basis. *Castile*, 617 F.3d at 927. *See also Wurst v. Astrue,* 866 F. Supp. 2d 951, 960 (N.D. Ill. 2012) ("[T]he ALJ did not err when

she determined which of Claimant's impairments were severe and continued on in the evaluative process based on finding at least one severe impairment.").

## 2. The RFC Assessment, Opinion Evidence and VE Testimony

Plaintiff next argues that the ALJ's RFC assessment is flawed because it does not reflect all of her limitations. A claimant's RFC is the maximum work that she can perform despite any limitations, and is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(1); SSR 96-8p. "When determining the RFC, the ALJ must consider all medically determinable impairments, . . . even those that are not considered 'severe.'" *Craft*, 539 F.3d at 676.

The ALJ found that Plaintiff has the capacity to perform light work with the following restrictions: she needs a sit/stand option; she cannot climb ladders, ropes, or scaffolds, nor can she kneel or crawl; she can occasionally climb ramps or stairs, stoop and crouch; she can frequently handle, finger and feel; she must have a job that can be performed while using a hand-held assistive device at all times when standing; and she must avoid even moderate exposure to extremes of cold, heat, wetness and humidity, and must avoid concentrated exposure to excessive noise. (R. 18). In making this determination, the ALJ gave considerable weight to the opinions from Dr. Andrews and Dr. Dow, both of whom concluded that Plaintiff has the ability to perform light work with no postural or manipulative limitations. The ALJ also discussed in detail Dr. Shah's assessment that Plaintiff can walk slowly without a cane, can get up from a chair and off the exam table, and has full but slow range of motion and full strength in her arms and legs, with a normal ability to grip, grasp, and perform fine and gross manipulations. (R. 16, 211-12, 214, 220).

Plaintiff fails to mention any of these medical opinions in discussing her RFC. Instead, she provides a recitation of various diagnostic tests and treatment notes: September 2010 x-rays showing arthritis and diffuse osteopenia of the hands and mild osteoarthritis of the knees (R. 17, 243-44); a February 2011 chest CT scan showing multilevel degenerative changes in the thoracic spine but no suspicious osseous lesions (R. 17, 340); and a March 2011 bone densitometry showing osteoporosis of the lumbar spine and osteopenia of the neck. (R. 17, 233; Doc. 19, at 6-7). She then states in conclusory fashion that the records "show that Plaintiff would be unable to work at the level that the ALJ determined in his RFC finding." (Doc. 19, at 7). The problem is that none of the cited records says anything about Plaintiff's functional abilities, much less suggests that she has greater limitations than those imposed by the ALJ. As a result, those records do not alone suffice as a basis for reversing the ALJ's RFC determination.

Turning to the treatment notes, Plaintiff stresses that a June 20, 2010 record states that she went to the ER twice over a 3-month period due to joint pain. (R. 224). Once Plaintiff started seeing Dr. Maric and taking proper medication, however, she never went back to the ER and generally required only a series of scheduled follow-up exams over the next year and a half. (R. 221-23, 232, 234, 291, 296, 328). At her July 15, 2010 appointment, for example, Plaintiff's pain was at a level of 2 out of 10. (R. 223). Plaintiff says that during her next August 31, 2010 examination she "complained of continued, chronic pain," (Doc. 19, at 6), but the note in question actually reflects that she reported her pain at a level of 0 out of 10. (R. 222). Her assertion that she received "a pain shot" on November 4, 2010 is also inaccurate, (Doc. 19, at 6), as she actually received nothing more than a flu shot that day. (R. 221). With respect to

Plaintiff's knees, it is true that the pain was so bad on June 9, 2011 that the medication was no longer controlling it and had to be increased. (Doc. 19, at 6). She neglects to point out, however, that one month later, at the July 7, 2011 exam, her pain was at a 0 out of 10. (R. 346).

The only record that supports a more restrictive RFC is Dr. Maric's December 31, 2011 opinion that Plaintiff is capable of at most sedentary work with limited ability to reach, handle, finger, push and pull. (Doc. 19, at 11-15; Doc. 7-8; R. 323-25). In a separate section of her brief, Plaintiff argues that the ALJ should have given this opinion greater weight, and erred in relying on the contrary opinions from Dr. Andrews and Dr. Dow.

A treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); see Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Campbell v. Astrue, 627 F.3d 299, 306 (7th Cir. 2010). An ALJ must offer "good reasons" for discounting a treating physician's opinion, Scott, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, and (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6). See, e.g., Simila, 573 F.3d at 515.

Dr. Maric stated that Plaintiff can: occasionally lift 10 pounds; frequently lift less than 10 pounds; stand and walk for less than 2 hours a day; sit and stand for 30 minutes at a time before needing to change positions; frequently twist; occasionally stoop and climb stairs; and never crouch, climb ladders, kneel, crawl or balance. (R. 17, 265-66). In addition, Plaintiff needs a sit/stand option; has restricted ability to reach, handle, finger, push and pull; and must avoid exposure to respiratory irritants, extreme temperatures and hazards. (R. 266). She would also be absent from work about three times a month. (R. 267).

The ALJ gave several reasons for declining to assign this opinion much weight: (1) it was contradicted by the opinion from Dr. Andrews, affirmed by Dr. Dow; (2) it was "not consistent with the evidence of record and was conclusory with no explanation as to why [Dr. Maric] limited [Plaintiff] to the extent [s]he did"; (3) it was "not supported by the objective clinical and laboratory findings noted in either the clinic or the hospital"; and (4) Dr. Maric "merely coded some boxes on a form" and "treatment records do not corroborate h[er] assessment." (R. 19). There is ample support for these findings.

Though Dr. Maric had regular appointments with Plaintiff from June 2010 through December 2011 and routinely documented complaints of joint pain and numbness in the ankle, knee, hand, leg and shoulder, she rarely made any observations about Plaintiff's functional abilities or limitations. (R. 17, 221-24). The only two exceptions are found in the July and October 2011 treatment notes when Dr. Maric indicated that Plaintiff was able to walk with a cane secondary to bunions. (R. 297, 329). Notably, the ALJ expressly accommodated Plaintiff's need to use a cane when standing. (R. 18).

16

The first time Dr. Maric ever indicated that Plaintiff has restricted ability to sit, stand, walk, and use her hands was in the December 2011 check-box form she completed in connection with Plaintiff's request for disability benefits. According to Dr. Maric's treatment notes, Plaintiff's "[c]hief complaint" that day was "brings a form to be filled out regarding disability." (R. 326). The form contained a space for Dr. Maric to identify the "medical findings, including the effects of pain and medication, [that] support the . . . limitations" set out in her opinion, but she left that section blank. (R. 325). Nor is there any explanation for why Plaintiff would be expected to miss three days of work each month. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (when not supported by medical records, "a check-box form" is by itself "weak evidence."); *Allen v. Colvin*, 942 F. Supp. 2d 814, 827 (N.D. Ill. 2013) (ALJ may properly discount a treating physician's opinion found on a pre-printed form with no medical support).

Plaintiff insists that Dr. Maric's limitations are supported by the same diagnostic findings she recited in connection with the RFC argument: arthritis and diffuse osteopenia of the hands, mild osteoarthritis of the knees, multilevel degenerative changes in the thoracic spine, osteoporosis of the lumbar spine, and osteopenia of the neck. (R. 17, 233, 243-44, 340). The ALJ discussed all of these records, but as noted, he also found it significant that Dr. Andrews and Dr. Dow both concluded that Plaintiff nonetheless retains the RFC for light work with no manipulative limitations. And this RFC is entirely consistent with the results of Dr. Shah's January 2011 exam. (R. 16, 211-12, 214, 220).

Plaintiff objects that the ALJ should not have relied on Dr. Andrews's "outdated" assessment because he "did not have an opportunity of a year's worth of treatment

17

notes and corresponding diagnoses." (Doc. 19, at 12). All of the diagnostic evidence, however, is dated prior to April 25, 2011 when Dr. Dow affirmed Dr. Andrews's January 31, 2011 opinion. Plaintiff makes no claim that Dr. Andrews and/or Dr. Dow lacked access to, or failed to consider these records or the other available treatment notes. Nor does she point to any post-April 2011 test or report that establishes greater functional limitations, aside from the conclusory form completed by Dr. Maric.

Also unavailing is Plaintiff's argument that the ALJ should not have relied on Dr. Andrews's assessment because he did not personally examine her. (Doc. 19, at 13). "It is well established in this Circuit that an ALJ is entitled to rely on the opinion of a state agency physician." *Butler v. Astrue*, No. 10 C 6098, 2011 WL 6207089, at *7 (N.D. Ill. Dec. 13, 2011) (citing *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004)). While the ALJ was not permitted to reject Dr. Maric's opinion based *solely* on the conflicting opinions from Dr. Andrews and Dr. Dow, *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003), that is not what occurred here. Rather, the ALJ identified several valid reasons for discounting Dr. Maric's opinion, including a lack of objective support in the medical record or on the check-box form she completed, and the conflicting evaluation from State agency examiner Dr. Shah. (R. 16, 19). *Givens v. Colvin*, 551 Fed. Appx. 855, 860 (7th Cir. 2013) ("Although an ALJ generally affords more weight to the opinion of a source who has examined a claimant than to the opinion of a source who has not, the weight ultimately given to that opinion depends on its consistency with and objective medical support in the record; the quality of the explanation the source gave for the opinion; and the source's specialization.").

Plaintiff finally argues in somewhat conclusory fashion that the ALJ "played doctor" by "offering his own lay opinion on [her] condition." (Doc. 19, at 13). This argument fails because the opinion from Dr. Shah, together with the RFC assessments from Dr. Andrews and Dr. Dow, all support the ALJ's finding that Plaintiff is capable of light work. *See, e.g., Olsen v. Colvin*, 551 Fed. Appx. 868, 874 (7th Cir. 2014) ("The cases in which we have concluded that an ALJ 'played doctor' are ones in which the ALJ ignored relevant evidence and substituted her own judgment.").

Viewing the record as a whole, the Court is satisfied that the ALJ built a logical bridge between the evidence and his RFC determination. After properly discussing and weighing the opinion evidence, the ALJ accepted Dr. Andrews's assessment, affirmed by Dr. Dow, that Plaintiff can perform light work. He then imposed additional restrictions to account for any "new evidence the state agency did not have in its possession," (R. 20), including Plaintiff's use of a cane, and her testimony that she needs the option to sit or stand at will, cannot use her hands on a constant basis, and has less than full ability to climb, stoop and crouch. (R. 20).

Having concluded that the RFC determination is supported by substantial evidence, there is no merit to Plaintiff's assertion that the hypothetical question posed to the VE was flawed. Plaintiff claims that the ALJ should have limited her to occasional and not frequent use of her hands, and accepted Dr. Maric's notation that she would miss work about three times per month. Plaintiff insists this alleged error is not harmless because the VE testified that a person with those restrictions would not be able to perform any jobs. (Doc. 19, at 8, 15; R. 54-55). As discussed, neither of these limitations finds support in the record aside from Dr. Maric's conclusory check-box form.

"ALJ[s] need only incorporate into their hypotheticals impairments and limitations that they deem credible." *Sopear Chan Som v. Astrue*, No. 10 C 1808, 2012 WL 1409509, at *19 (N.D. Ill. Apr. 19, 2012) (citing *Simila*, 573 F.3d at 521). The ALJ's hypothetical question to the VE properly incorporated all credible limitations, and his decision in this case is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [18] is denied and Defendant's Motion for Summary Judgment [24] is granted. The clerk is directed to enter judgment in favor of Defendant.

ENTER:

Dated: January 16, 2015

_____
SHEILA FINNEGAN
United States Magistrate Judge